

COPY

ORIGINAL FILED

APR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   THO NGUYEN
    61 Bitting Avenue
2   San Francisco, California 94124
    (415) 516-4733
3
4   Petitioner
    THO NGUYEN
5
                                        E-filing
6
7               UNITED STATES DISTRICT COURT
8               NORTHERN DISTRICT OF CALIFORNIA
9
10  THO NGUYEN,                        )   Case No.
                                       )
11           Petitioner,               )   CV 08
                                       )
12       v.                            )   1952
                                       )
13  NANCY ALCANTAR, Field Office Director,  )   PETITION FOR WRIT
    Immigration and Customs Enforcement, DHS, )   OF HEBEAS CORPUS
14  and DEPARTMENT OF HOMELAND         )
    SECURITY,                          )
15                                     )   FILE BY FAX
             Respondents.              )
16                                     )
17                                     )
18
19       EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

20          AND COMPLAINT FOR DECLARATORY

21                AND INJUNCTIVE RELIEF

22       I, THO NGUYEN, am the Petitioner hereby respectfully petitions this Honorable Court

23  for a writ of habeas corpus to prevent my unlawful removal from the United States, to provide an

24  opportunity to have meaningful review of the Respondent's failure to provide me with a

25  meaningful review of my immigration case and to enjoin Respondent from either removing me,

26  finding me ineligible for relief, and/or deeming me subject to detention and removal from the

27  United States.

28       In support of this petition and complaint for declaratory and injunctive relief, I allege as

                                        -1-
        EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY
                                AND INJUNCTIVE RELIEF

1  follows:

2                                        **CUSTODY**

3       1.    Respondent previously detained me at the DHS detention facility at Kern County

4  Jail in Bakersfield California May 4, 2006.

5       2.    On March 19, 2008, Respondent issued a Notice to Surrender (Form I-166) and

6  served it by mail on me. *(See Exhibit A, a true and correct copy of Form I-166.)*

7       3.    I have been informed and confirmed that Respondents intend to place me on the

8  flight from San Francisco to Vietnam ___on April 21, 2008 at 9:00 a.m.___

9       4.    I remain under the direct and constructive control of Respondents and their agents

10  via an Order of Supervision.

11                               **JURISDICTION AND VENUE**

12       5.    This action arises under the Constitution of the United States, the Immigration

13  and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.,* and the Administrative Procedure Act

14  ("APA"), 5 U.S.C. § 701 *et seq.* This Court has jurisdiction under 28 U.S.C. § 2241(c)(1) & (3),

15  art I. § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as

16  Petitioner is in custody under color of the authority of the United States, and such custody is in

17  violation of the Constitution, laws, or treaties of the United States. This Court may grant relief

18  pursuant to 28 U.S.C. § 2241, the APA, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,*

19  and the All Writs Act, 28 U.S.C. § 1651.

20       6.    Venue lies in the United States District Court for California, the judicial district in

21  which Respondents routinely conduct business and in which Petitioner resides.  28 U.S.C.

22  § 1391(e).

23                                       **PARTIES**

24       7.    I am a native and citizen of Vietnam. My mother is a naturalized U.S. citizen; my

25  only brother is a legal permanent resident of the United States, a "green card" holder.  I currently

26  resides in San Francisco, California.

27       8.    Defendant ALCANTAR is the Field Office Director at Immigration & Customs

28  Enforcement, a subdivision of the Department of Homeland Security, for the San Francisco

1  District. Respondent ALCANTAR has direct and continuing control over me and has ordered
2  and authorized my surrender and detention in San Francisco, California, as well as my imminent
3  removal to Vietnam.

4    9.    Defendant Department of Homeland Security ("DHS") has responsibility for the
5  administration of the immigration laws pursuant to 8 U.S.C. § 1103, routinely does and transacts
6  business in California, has responsibility for any determination on voluntary departure and is
7  responsible for my arrest, detention and the current deportation process.

8    10.    Defendant-Respondent DHS is made a party/defendant for purposes of obtaining
9  declaratory and injunctive relief pursuant to the APA and the Declaratory Judgment Act. DHS,
10 through USICE, exercises power and authority over aliens on a nationwide basis and is sued in its
11 capacity as legal custodian of Petitioner-Plaintiff.

12                              **EXHAUSTION OF REMEDIES**

13    11.    I am not entitled to file a Motion for a Stay at the BIA at this time. The Board is
14 only authorized to grant discretionary stays in matters within its jurisdiction (8 C.F.R. §
15 1003.6(b)), and that jurisdiction only permits the Board to consider a request for a stay when an
16 appeal, a motion to reopen, or a motion to reconsider is pending before the Board. BIA Practice
17 Manual, Ch. 6.3(a). No such request has been made to the board, nor would such a request be
18 appropriate, given the circumstances presented here.

19                                **STATEMENT OF FACTS**

20    12.    I am a legacy of the Vietnam conflict. My mother and father are both
21 Vietnamese. My father abandoned my family and me when I was an adolescent.

22    13.    Vietnamese who helped the Americans in the war effort — especially those from
23 such families — suffered persecution from the communist government. In an effort to alleviate
24 this persecution, the United States arranged for families such as mine to emigrate from Vietnam
25 to the United States. I lawfully entered the United States as part of this program on January 29,
26 1980.

27    14.    Although I moved to the United States, I remained a citizen of Vietnam. In
28 August 29, 2003, an immigration judge ordered my deportation. However, the deportation order

1  has never been executed because the government of Vietnam steadfastly refuses to issue the
2  travel documents necessary for me to return.

3      15.    The Attorney General's failure to effect deportation within six months from the
4  time of the order of deportation entitles the alien to release without bond, subject to supervision.
5  8 U.S.C. § 1231)(1)(A).

6      16.    On July 26, 2006, the U.S. Immigration and Customs Enforcement Division (ICE)
7  of the Department of Homeland Security released Petitioner from immigration custody under an
8  Order of Supervision. The Order of Supervision directed that I "not commit any crimes while on
9  this Order of Supervision [and] to report periodically to the department" — conditions with
10 which I have fully and completely compiled. *(See Exhibit B, a true and correct copy of the Order*
11 *of Supervision.)*

12     17.    On January 22, 2008, ICE Assistant Secretary Myers signed the "historical
13 Memorandum of Understanding (MOU) with Vietnam MOU [which] will allow for the
14 repatriation of Vietnam Citizens who entered the United States on or after July 12, 1995." *(See*
15 *Exhibit C, a true and correct copy of the memorandum of agreement.)*

16     18.    I do not fall within the MOU because I entered the United States *prior to* July 12,
17 1995. *(See Exhibit D, a true and correct copy of his permanent resident card.)*

18     19.    Detention of me is authorized only as "reasonably necessary" to effectuate my
19 removal. *Zadvydas v. Davis*, 533 U. S. 678, 689 (2001).

20     20.    Respondents have brought forward nothing to indicate that a substantial
21 likelihood of removal exists or that removal to Vietnam is reasonably foreseeable because I do
22 not fall within the MOU due to the fact that he entered the United States prior to July 12, 1995.

23     21.    I am fully eligible to apply for permanent residence by way of moving the Board
24 of Immigration Appeals to reopen the proceedings expressly for that purpose. DHS agents are
25 required to join in that effort where such application is not barred by statutory ineligibility or
26 otherwise not merited in the exercise of discretion. *Matter of Velarde-Pacheco*, 23 I&N Dec.
27 253 (BIA 2002*); see also* General Counsel Memo, "Motions to Reopen for Consideration of
28 Adjustment of Status," dated May 17, 2001.

-4-

1     22.    The immigration court has failed to provide me with the minimum requirements

2 of due process, and I have been prejudiced by this error. Based on the procedural deficiencies in

3 the underlying matter, my overstay of voluntary departure would render him statutorily ineligible

4 for an adjustment of status. *Matter of Shaar*, Int. Dec. 3290 (BIA 1996). Further, because more

5 than five (5) years have elapsed since the entry of the order of voluntary departure, I am not

6 barred from applying for relief.

7     23.    As a person residing in the United States, I am protected by every clause of the

8 United States Constitution that is not expressly reserved to its citizens. This protection includes the

9 Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall be . . .

10 deprived of life, liberty, or property, without due process of law." U.S. CONST., Amend. V; see,

11 *e.g., Plyler v. Doe*, 457 U.S. 202, 210 (1987); *Mathews v. Diaz*, 426 U.S. 67 (1976); *Yamataya v.*

12 *Fisher*, 189 U.S. 86 (1903); *see also Doherty v. Thornburgh*, 943 F. 2d 204, 208 (2d Cir. 1991)

13 (finding that even aliens unlawfully present in the U.S. have a "substantive due process right to

14 liberty during deportation proceedings"), *cert. dismissed, Doherty v. Barr*, 503 U.S. 901 (1992).

15 The Fifth Amendment also creates a procedural due process right to be heard at a meaningful

16 time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

17     24.    If this court fails to act by granting the remedies sought herein, I will continue to

18 suffer unconstitutional detention and custody, and the harm so created will otherwise be

19 irreparable. I have no other plain, speedy or sufficient remedy available.

20               **CLAIM FOR RELIEF**

21     25.    I re-alleges and incorporates by reference each and every allegation contained in

22 the paragraphs 1 through 24 as if set forth fully herein.

23     26.    Respondents' intended detention of me is in violation of law and violates

24 Petitioner's right to substantive and procedural due process.

25     27.    Respondents' intended deportation of me is in violation of law and violates my right

26 to substantive and procedural due process by depriving me of the ability to proceed with my

27 application for cancellation of deportation or Adjustment of status. The denial further subjects me to

28

EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    a permanent bar from the United States without review and would separate me from my only family,

2    all whom are legally residents or citizens of the United States.

3                                 **GROUNDS FOR RELIEF**

4                        **1.    Unlawful Detention of Removable Alien**

5            Where an alien's home country refuses to grant travel documents to the alien, resulting in

6    the alien's continued detention, there is an implicit limitation in the statute, which, read in light of

7    the Constitution's demands, limits an alien's post-removal-period detention to the period

8    "reasonably necessary" to bring about that alien's removal from the United States. *Zadvydas v.*

9    *Davis*, 533 U. S. 678, 689 (2001).

10           In a number of the reported cases, most of which have involved criminal aliens, the

11   alien's home country and third countries which the alien has ties to have refused to grant travel

12   documents to the alien, thus precluding the alien's removal during the normal 90-day period

13   provided for the government to effect the alien's removal. This has resulted in the alien's

14   continued detention, sometimes for years. Many aliens in this situation have challenged their

15   continued detention as amounting to permanent or indefinite detention. Chi Thon Ngo v. I.N.S.,

16   192 F.3d 390 (3d Cir. 1999), amended, (Dec. 30, 1999), amended, (Dec. 30, 1999; *Sengchanh v.*

17   *Lanier,* 89 F. Supp. 2d 1356 (N.D. Ga. 2000); *Nguyen v. Fasano,* 84 F. Supp. 2d 1099 (S.D. Cal.

18   2000); *Dominguez-Estrella v. U.S. I.N.S.*, 71 F. Supp. 2d 578 (W.D. La. 1999); *Villafuerte v.*

19   *U.S. I.N.S.,* 71 F. Supp. 2d 573 (W.D. La. 1999); *Vo v. Greene*, 63 F. Supp. 2d 1278 (D. Colo.

20   1999); *Phan v. Reno*, 56 F. Supp. 2d 1149 (W.D. Wash. 1999); *Fernandez Luiz v. Luttrell*, 46 F.

21   Supp. 2d 754 (W.D. Tenn. 1999); *Hermanowski v. Farquharson*, 39 F. Supp. 2d 148 (D.R.I.

22   1999); *Cabreja-Rojas v. Reno*, 999 F. Supp. 493 (S.D. N.Y. 1998); *Lleo-Fernandez v. I.N.S.*, 989

23   F. Supp. 518 (S.D. N.Y. 1998); *Singh v. U.S. I.N.S.*, , 965 F. Supp. 724 (D. Md. 1997); *In re Nai*

24   *Meng Saelee*, Respondent, 22 I. & N. Dec. 1258, 2000 WL 33955992 (B.I.A. 2000).

25           The Supreme Court of the United States has now addressed this issue in two consolidated

26   actions brought by resident aliens. *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed.

27   2d 653 (2001). The Court concluded that there is an implicit limitation in the statute, which, read

28   in light of the Constitution's demands, limits an alien's post-removal-period detention to a period

1  | "reasonably necessary" to bring about that alien's removal from the United States; it does not
2  | permit indefinite detentions.

3  |      Whether a set of particular circumstances amounts to detention within, or beyond, a
4  | period reasonably necessary to secure removal is determinative of whether the detention is, or is
5  | not, authorized by statutory authority. The basic federal habeas corpus statute grants the federal
6  | courts authority to determine that issue. In so doing, the habeas court must ask whether the
7  | detention in question exceeds a period reasonably necessary to secure removal. It should
8  | measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the
9  | alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the
10 | court should deem continued detention unreasonable and no longer authorized by statute.

11 |      The Ninth Circuit Court of Appeals has taken the view that the requirement limiting an
12 | alien's post-removal-period detention to a reasonable time period, established by the Supreme
13 | Court's ruling in Zadvydas, applies to aliens deemed inadmissible to the United States. *Xi v. U.S.*
14 | *I.N.S.*, 298 F.3d 832 (9th Cir. 2002).

15 |      In the instant case, I do not fall within the MOU. (See Exhibit A, attached hereto, which
16 | is a true and correct copy of the MOU press release.) Since I do not fall within the MOU, travel
17 | documents will not be issued by the Vietnamese government. This being the case, my detention
18 | is *not authorized* by statute because mys removal is not *reasonably foreseeable.* Thus, the Court
19 | should deem surrender and detention unreasonable.

20 |      **2.    Due Process Right to Legal Representation**

21 |      I am entitled to Due Process of law under the Fifth Amendment to the Constitution of the
22 | United States. A long line of cases, including Supreme Court precedent, has established that
23 | deportable non-citizens — even those who are unlawfully present in the United States, are protected
24 | by the Constitution. *See Yamataya v. Fisher*, 189 U.S. 86 (1903); *Plyler v Doe*, 457 U.S. 202 (1982);
25 | *Mathews v. Diaz*, 426 U.S. 67 (1976). The *Plyler* Court explicitly stated that "the Fifth Amendment
26 | protects aliens whose presence in this country is unlawful." 457 U.S. at 210. Under the Due Process
27 | Clause, there is no question that a "vital liberty interest" is at stake when an individual is subject to
28 | detention and deportation by legacy INS/DHS. Freedom from custody is a fundamental interest that

EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1  may not be denied without some individualized determination that the individual poses a safety or

2  flight risk. *Leader v. Blackman*, 744 F. Supp. 500, 509 (S.D. N.Y. 1990); *Caballero v. Caplinger*,

3  No. 95-3129 (E.D. La. Feb. 6, 1996).

4          Although non-citizens do not possess a Sixth Amendment right to assistance of counsel at

5  government expense in immigration proceedings, they do have a right to competent representation at

6  their own expense. *See* INA §§ 242(b)(2) & 292, 8 U.S.C. §§ 1252(b)(2) & 1362; 8 C.F.R. §§ 3.1(b)

7  & 242.10; *see also Olvera v. INS*, 504 F.2d 1372 (5th Cir. 1974). This fundamental right is

8  considered a part of the Due Process guarantees under the Fifth Amendment to the Constitution. *See*

9  *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990).

10          In the instant case, I appeared before the Immigration Court with an individual who held

11  himself out to be as an attorney.  Subsequent investigations have revealed, however, that this

12  individual was not duly licensed to practice law.  In circumstances such as the instant case where

13  a non-citizen has been the victim of not only ineffective assistance of counsel but outright

14  fraudulent representation, courts have granted relief even absent a showing of prejudice.  *See,*

15  *e.g.*, *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1994).

16          In the instant case, prejudice is clearly present.  I would have been eligible for relief

17  through an application for suspension of deportation under then-section 244 of the INA within a

18  matter of months.  Had I sought to prosecute such an application and schedule a merits hearing,

19  it is extremely likely the Court would not have been able to find a date prior to which I would

20  become eligible.

21          Although suspension of deportation has been eliminated as a form of relief from

22  deportation and its replacement, cancellation of removal, includes a "stop-time" rule which cuts

23  off accrual of residency upon service of a charging document, at the time of his hearing, it was

24  common practice to continue cases for a few months until an applicant could meet the seven year

25  requirement.  Even if the Judge had refused to continue the matter for such relief, a timely

26  prosecuted appeal would have provided the extra time necessary to qualify and would have

27  justified a motion to remand for consideration of his application. Based on the substantial

28  equities in my case and the extensive family ties I have in the United States, I would have been

EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 | in a position to present a compelling case.

2 | **3.    Due Process Right to a Fundamentally Fair Hearing**

3 | Both statutes and regulations require that individuals placed in immigration proceedings

4 | be informed of their right to counsel, their right to examine the evidence against them, their right

5 | to present testimony on their own behalf, and their right to appeal the Immigration Judge's

6 | decision (among other rights). *See* 8 C.F.R. § 1240.10 (regulations governing advisements which

7 | are essentially identical to those in effect at the time of THO NGUYEN'S hearing).

8 | Whether the Judge attempted to inform me of any of these rights (as required) is difficult

9 | to determine because a transcript of the proceeding was never ordered. Fortunately, in the instant

10 | case, no transcript is necessary because whatever attempts the Judge may have made would have

11 | been entirely futile without an interpreter. To this day, my English skills are fairly limited. At

12 | the time I appeared before the Court, my skills were practically non-existent. I first appeared

13 | before the Immigration Court, without an attorney. No translator was present and the attorney

14 | did not speak Vietnamese and I was not able to seek a continuance in order to obtain competent

15 | legal representation.

16 | In a similar vein, any waiver of rights which may have been asserted by me could not

17 | have been considered either knowing or intelligent. I had absolutely no idea of whether I was

18 | eligible for any relief, whether I could ask for more time, or whether I could appeal the Judge's

19 | decision. *See U.S. v. Ahumada-Aguilar*, 295 F.3d 943 (9th Cir. 2002) (finding prejudice where

20 | an alien had not been advised of the right to appeal the Judge's decision in order to gain

21 | sufficient time to qualify for available alternative relief); *U.S. v. Arrieta*, 224 F.3d 1076, 1079

22 | (9th Cir. 2000) (holding that pro se alien's waiver of the right to appeal his deportation order was

23 | invalid where the IJ failed to inform him about his eligibility for relief from deportation).

24 | Under ordinary circumstances, an individual is bound by the representations of their

25 | chosen counsel. In the instant case, however, where counsel (if that term can even be used,

26 | given the fact "counsel" was not a licensed attorney) was so clearly ineffective any

27 | representations which may have been made should be given no effect.

28 | Apart from the lack of an interpreter and the ineffective assistance of counsel, the hearing

-9-

1 | which ultimately determined petitioner's fate suffered from another significant flaw: I was never
2 | advised of my right to prosecute the application for asylum which had prompted my referral to
3 | immigration proceedings in the first place. While Immigration Judges are not required to advise
4 | every person before them of their eligibility to file for asylum, they are required to explain such
5 | rights in cases where an individual has either expressed a fear or otherwise manifested intent to
6 | seek asylum. *Opoku v. INS*, 1989 U.S. Dist. LEXIS 7011 (S.D. N.Y. 1989). In cases where pro se
7 | Respondents appear to be eligible for forms of discretionary relief from deportation, the
8 | Immigration Courts do have an obligation to determine whether the Respondents are aware of
9 | their eligibility and wish to prosecute an application. Former 8 C.F.R. § 242.17 (1997) (in effect
10 | at the time of my hearing); *Matter of Cordova*, 22 I & N Dec. 966 (BIA 1999) (noting
11 | Immigration Judge's "duty to inform aliens of potential forms of relief for which they are
12 | apparently eligible"); *Bui v. INS*, 76 F.3d 268 (9th Cir. 1996) (immigration judge must inform an
13 | alien in a deportation hearing of an alien's 'apparent eligibility' to seek relief). There is no
14 | indication in the (limited) record (or my recollection) that the Court ever informed me that I
15 | would be eligible for collateral relief.

16 |      Given the ineffective assistance of counsel, the lack of an interpreter and the failure to
17 | advise me of my rights (to seek relief and appeal), it could hardly be any clearer that my rights to
18 | a fundamentally fair hearing were denied. But for the infringement of these rights, I would have
19 | had an opportunity to present a compelling case for suspension of deportation.

20 |

21 | **PRAYER FOR RELIEF**

22 |      WHEREFORE, I prays that this Honorable Court grant the following relief:

23 |      1.  Grant the writ of habeas corpus;

24 |      2.  Enjoin Respondents from effecting my deportation;

25 |      3.  Enjoin Respondents from effecting the Surrender Order;

26 |      4.  Order that Respondents join in my efforts to reopen the removal proceedings on the
27 | basis of my application for adjustment of status to permanent residence as authorized; and

28 |      5.  Grant any other and further relief which this Honorable Court deems just and proper.

-10-

6.  I verify under penalty of perjury that the foregoing is true and correct.

Executed on _4/11/08_

_Nguyen, Tho_

THO NGUYEN, Petitioner

-11-
EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

**DEPARTMENT OF HOMELAND SECURITY**
**U. S. IMMIGRATION AND CUSTOMS ENFORCEMENT**
630 Sansome Street
San Francisco, CA 94111

File No.   A23 879 102

Date:   March 19, 2008

⌐ THO NGUYEN                                          ⌐
  A.KA. KEVIN THO NGUYEN
  61 BITTING AVENUE
└ SAN FRANCISCO, CA 94124                             ┘

As you know, following a hearing in your case you were found removable and the hearing officer has entered an order of removal. A review of your file indicates there is no administrative relief, which may be extended to you, and it is now incumbent upon this Service to enforce your departure from the United States.

Arrangements have been made for your departure to _____**VIETNAM**_____ on

_____**April 21, 2008**_____ from _____**San Francisco, California**_____ on the
       (Date)                          (Port of departure)

**Transportation to be provided by the Government**
                (Name of vessel, airline, or other transportation)

You should report to a United States Immigration Officer at   **5ᵗʰ Flr/ Rm. 548/Window A**
                                                                        (Flr.)

**630 Sansome Street, San Francisco, CA 94111**   at   **9 AM on April 21, 2008**
                  (Address)                                    (Hour and date)

Completely ready for deportation. At the time of your departure from   **San Francisco, California**
                                                                                (Place of surrender)

You will be limited to _____**40**_____ pounds of baggage.

Should you have personal effects in excess of this amount, you must immediately contact

**Deportation Officer – CROSBY**   at   **(415) 844-5653**   , or call in person at the
      (Name of officer)                  (Phone no.-A/M ext.)

address noted above, and appropriate disposition of your excess baggage will be discussed with you.

Very truly yours,

Anthony M. Aiello
Assistant Field Office Director

cc   **MACIONE, LOVE**
     **32 CHATSWORTH COURT**
     **OAKLAND, CA 94611**

Form I-166
(Rev. 4-1-89)

04/08/2008 01:06 FAX 4153917547          COPY CENTRAL                          ☒002

**U.S. Department of Justice**

Immigration and Naturalization Service

**Warning for Failure to Comply
with Terms of Supervised Release**

| Name: | District Office: | File #: |
|---|---|---|
| NGUYEN, Tho | SFR | A23 879 102 |

Section 243(b) of the Immigration and Nationality Act of 1952, as amended, provides, in part, that:

An alien who shall willfully fail to comply with regulations or requirements issued pursuant to section 241(a)(3)* or knowingly give false information in response to an inquiry under such section shall be fined not more than $1000 or imprisoned for not more than one year, or both.

* Section 241(a)(3) of the Immigration and Nationality Act of 1952, as amended, provides, in part, that:

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

   (A)  to appear before an immigration officer periodically for identification;
   (B)  to submit, if necessary, to a medical and psychiatric examination at the expense of the United
        States Government;
   (C)  to give information under oath about the alien's nationality, circumstances, habits, associations,
        and activities, and other information the Attorney General considers appropriate; and
   (D)  to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General
        prescribes for the alien.

| Date Order Final: | Ordered Removed under Section: | |
|---|---|---|
| **August 29, 2003** | **INA Section 237 (a)(2)(A)(iii)** | |

**Record of Service**
(Check method used)

( )
**Record of Personal Service**

| Served By: (Print Name and Title of Officer) | | Dated |
|---|---|---|
| *Michael Cook* | | 7/27/06 |
| **Officer's Signature:** | **Location of Service:** | |
| | *Bakersfield, CA* | |
| **Served On: (Alien's Signature)** | | Date: |
| *Nguyen Tho* | | 7/27/06 |

( )
**Certified Mail Service**

Fingerprint of Alien (Specify finger used)

Attach certified mail receipts here.

Form I-229(b)
(Revised 08/20/01)



**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

SFR DRO 50/10

*Office of the Field Director*                    630 Sansome Street, Room 590
                                                  *San Francisco, CA 94111*

**NGUYEN, Tho**                                   **A23 879 102**
C/O IN SERVICE CUSTODY

## Notice to Alien of File Custody Review

You are detained in the custody of the Immigration and Customs Enforcement (ICE) and you are required to cooperate with the ICE in effecting your removal from the United States. If the ICE has not removed you from the United States within the removal period as set forth in INA 241(a) (normally 90-days) of either: 1) your entering ICE custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in ICE custody, the ICE Field Office Director will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating to the satisfaction of the Attorney General that you will not pose a danger to the community and will not present a flight risk.

Your custody status will be reviewed on or about: <u>(August 2, 2006)</u> . The Field Office Director may consider, but is not limited to considering the following:

1. Criminal convictions and criminal conduct;
2. Other criminal and immigration history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitation effort or recidivism;
8. Equities in the United States;
9. Cooperation in obtaining your travel document; and
10. Any available mental health reports.

You must submit any documentation you wish to be reviewed in support of your release, prior to <u>(July 15, 2006)</u>, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3). An attorney or other person may submit materials on your behalf. The Field Office Director will notify you of the decision in your case. Attached to this notice is a list of free or low cost legal representatives who may be able to provide assistance to you in preparing your case.

U.S. Department of Homeland Security
**Immigration and Customs Enforcement**
Attn: Custody Officer
630 Sansome St. 6th floor
San Francisco, CA 94111

## METHOD OF SERVICE

I certify that this form was provided to the alien by:          (Hand)          (Institution Mail)
() CC: Attorney of Record or Designated Representative
(x) CC: A-file

_____          Mark Moser          5|4|2006
Signature of Officer                     Print Name of Officer          Date

## INSTRUCTION SHEET TO DETAINEE REGARDING REQUIREMENT TO ASSIST IN REMOVAL

The following is a list of things you are required to complete within 30 days of receiving this form, in order comply with your obligation to assist in obtaining a travel document:

*Mandatory requirements will be checked off by the INS officer depending on the facts of each case. Failure to comply or provide sufficient evidence of your inability to comply, may result in the extension of the removal period and subject you to further detention. In addition, you may be subject to criminal prosecution. If you need assistance in complying with any of the requirements, please contact a Deportation Officer.*

- **X** Submit passports (current and expired) to the INS. If you have a copy of your passport, you are to submit it.
- **X** Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.
- **X** Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.
- **X** Submit to the INS birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.
- **X** Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document.
- **X** Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.
- **X** You are required to take measures to request reinstatement of your previous nationality, register as required, or take any other action that will ensure the issuance of a travel document and your removal from the United States.
- **X** Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.
- **X** Provide INS with written copies of responses from embassies or consulates regarding your requests.
- ☐ Solicit permission from another country, which may be able to accept you, to enter that country to effect your removal from the United States.
- ☐ Other: _____ .

Alien's Signature _Nguyen, Tho_     A Number **A23 879 102**

Served by _Osa_    on _5/4/2006_   at _SAN FRANCISCO, CA_
     Officer's Name         Date       Location

**To be served with I-229 (a) no later than 30 days after the final order**

(Rev. 10/24/02)

**U.S. Department of Homeland Security**
Immigration & Customs Enforcement         **Warning for Failure to Depart**

| Name:<br>NGUYEN, Tho | District Office:<br>San Francisco, CA | File #:<br>A23 879 102 |
|---|---|---|

Section 243(a) of the Immigration and Nationality Act of 1952, as amended, provides, in part, that:

    Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who—

        (A) willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,

        (B) willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,

        (C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or

        (D) willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

        shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action the Immigration and Naturalization Service may take to obtain a travel document for your departure or to remove you will NOT relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

*Section 241(a)(1)(C) provides for the extension of that period of time if the alien refuses, during the detention period, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal subject to an order of removal.

| Date Order Final:<br>08/29/2003 | Ordered Removed under Section:<br>237 (a)(2)(A)(iii) | |
|---|---|---|

**Record of Service**
(Check method used)

**Record of Personal Service**

| Served By: (Print Name and Title of Officer) | | Date:<br>5/4/2006 |
|---|---|---|
| MARK Hosa   DEPORTATION officer | | |
| Officer's Signature: | Location of Service:<br>SAN FRANCISCO, CA | |
| Served On: (Alien's Signature)<br>Nguyen Tho | | Date:<br>5/4/2006 |

| Warning administered in Court<br>(Copy of order attached) | Record of Personal Service (Cont) |
|---|---|
| **Certified Mail Service** | Fingerprint of Alien (Specify finger used) |
| Attach certified mail receipts here. | |

Form I-229(a)
(Revised 08/20/01)

# AGREEMENT

## BETWEEN

## THE GOVERNMENT OF THE UNITED STATES OF AMERICA

## AND

## THE GOVERNMENT OF THE SOCIALIST REPUBLIC OF VIETNAM

## ON

## THE ACCEPTANCE OF THE RETURN OF VIETNAMESE CITIZENS

The Government of the United States of America (hereinafter called "the U.S. Government") and the Government of the Socialist Republic of Vietnam (hereinafter called "the Vietnamese Government"),

With a wish of developing friendly relations between the two countries, and to establish procedures for competent authorities of both countries on the prompt and orderly acceptance of Vietnamese citizens who have been ordered removed by the U.S. Government,

In order to establish common procedures for the relevant authorities based on the legal principles of each country and the international responsibility to accept the return of repatriated citizens; and to follow recognized principles of international law, to allow for a case-by-case determination of repatriation, and to recognize the right of the receiving country to determine nationality,

Have agreed to the following:

### Article 1
### General Provisions

1. The U.S. Government will carry out the repatriation of Vietnamese citizens who violated U.S. law in accordance with U.S. and international law and the provisions of this Agreement. The repatriation should take into account the humanitarian aspect, family unity and circumstances of each person in each individual case.

2. The Vietnamese Government may consider the return of its citizens who violated U.S. law based on the consideration of legal procedures and the

status and circumstances of each individual case. The subject individuals and the acceptance procedure will be based on the terms of this Agreement.

3. Repatriation will be carried out in an orderly and safe way, and with respect for the individual human dignity of the person repatriated. The U.S. Government will allow Vietnamese citizens who have been ordered removed a reasonable time to arrange their personal affairs before returning them to Vietnam.

4. Persons repatriated under this Agreement have the right to transfer their legal money and personal property to Vietnam.

5. The U.S. Government will pay for the cost of returning to Vietnam persons repatriated under this Agreement, as provided in Article 5 and Annex 1. The U.S. Government will also pay for the cost of returning to the United States any person who was mistakenly repatriated, in accordance with Article 3 of this Agreement.

### Article 2
### Removable Persons and Conditions of Acceptance

1. The Vietnamese Government will accept the return of Vietnamese citizens in accordance with Article 1 and item 2 of Article 2 of this Agreement, if upon investigation the individual meets the following requirements:

(a) The individual is a citizen of Vietnam and is not a citizen of the United States or of any other country;

(b) The individual previously resided in Vietnam and has no current residence in a third country;

(c) The individual has violated U.S. laws and has been ordered by competent authority removed from the United States; and

(d) If the individual has been convicted of a criminal offense (including immigration violation), the person will have completed any imprisonment before removal, and any reduction in sentence will have been ordered by competent authority.

2. Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995, the date on which diplomatic relations were re-established between the U.S.

Government and the Vietnamese Government. The U.S. Government and the Vietnamese Government maintain their respective legal positions relative to Vietnamese citizens who departed Vietnam for the United States prior to that date.

3. In the case of a citizen of Vietnam who immigrated to the United States from a third country where that person had a permanent residence and who has been ordered removed from the United States, the U.S. Government will seek to return that person to the third country or consider allowing that person to stay in the United States, before requesting removal to Vietnam.

4. In any case where the Vietnamese Government obtains information relevant to the repatriation of an individual that was not previously considered by the U.S. Government, the Vietnamese Government may request a humanitarian reconsideration based on the specific circumstances of the repatriated person in accordance with United States law.

### Article 3
### Return of Persons Repatriated in Error

Upon notice by the Vietnamese Government that a person returned to Vietnam by the U.S. Government does not meet all criteria mentioned in Article 2 of this Agreement, the U.S. Government should promptly receive the return of that person to the United States without any special procedure.

### Article 4
### Acceptance Procedures

1. When the U.S. Government believes that a removable person is a citizen of Vietnam and meets all criteria within Article 2 of this Agreement, the U.S. Department of Homeland Security, on behalf of the U.S. Government, will request appropriate travel documents from the Vietnamese Government and will forward the appropriate files to that Government. Such files will include three sets of documents, the original and two copies. The original and one copy shall be forwarded to the Vietnamese Ministry of Public Security (Immigration Department) by the U.S. Embassy in Vietnam, and the other copy will be sent to the Vietnamese Ministry of Foreign Affairs (Consular Department).

Each file will contain a diplomatic note which requests that the Vietnamese Government accept the returnee, the name of the person the U.S. Government believes should be repatriated to Vietnam, the appropriate forms completed by such person (an example of which is provided in Annex 2 of

Case 3:08-cv-01952-MMC    Document 1    Filed 04/14/2008    Page 20 of 26

this Agreement), a copy of the order of removal, and other documents regarding the person's biography, citizenship, criminal history, sentence imposed, and decision of amnesty or reduction of criminal sentence. The order of removal will be translated into Vietnamese on the standard form, and the criminal history will include a National Crime Information Center (NCIC) record in English accompanied by a code key translated into Vietnamese. All documents and translations will be certified by the competent U.S. authorities.

2. Upon request by the Vietnamese Government, the U.S. Government will arrange and facilitate the interview of persons who fall within Article 2(1) of this Agreement by Vietnamese immigration officials to determine information regarding the Vietnamese citizenship, biographical data, and last place of residence of such persons. The U.S. Department of Homeland Security will arrange a venue for those interviews. The U.S. Government also will facilitate interviews by U.S.-based consular officers of the Vietnamese Government of deportable persons whom the U.S. believes to be Vietnamese citizens.

3. The Vietnamese Government will provide a prompt response to the U.S. Government on cases referred under this Article after the Vietnamese verification is made. If it is determined that a person whose name and file has been provided to the Vietnamese Government in accordance with this Article meets the requirements of Article 2, the Ministry of Public Security of the Vietnamese Government will issue a travel document authorizing that person's return to Vietnam, and will provide written notification to the U.S. Embassy in Vietnam.

4. When the Vietnamese Government has issued a travel document under this Agreement, the U.S. Government will provide at least fifteen (15) days notice of the flight and travel arrangements by which the person will be returned to Vietnam. The U.S. Embassy in Vietnam will inform the Ministry of Public Security (Immigration Department) and the Ministry of Foreign Affairs (Consular Department) of the date and number of the flight, the time of arrival, the port of entry (Noi Bai Airport in Hanoi or Tan Son Nhat Airport in Ho Chi Minh City), and the details regarding any U.S. officers escorting the person to be returned (such as names, dates of birth, passport numbers, estimated times of stay in Vietnam, etc), and allow the Vietnamese side to confirm receipt of the returnees.

When a person under medical treatment is returned to Vietnam under this Agreement, the escorting U.S. officers will provide a copy of the person's health record to the receiving Vietnamese officials at the port of entry. The

escorting and receiving officers will sign a joint report verifying the person's repatriation.

## Article 5
### Expenses

1. The U.S. Government will pay for the cost of transporting Vietnamese citizens to Vietnam under this Agreement.

2. The U.S. Government will pay for the costs of receiving repatriated persons including: verifying fee, the receipt at the airport and transportation of the persons from airport to the place of residences in accordance with the enclosed Annex 1.

3. The U.S. Government will pay for the cost of arranging interviews by relevant Vietnamese officials of persons whom the U.S. Government believes to be Vietnamese citizens and subject to repatriation under this Agreement.

4. The U.S. Government will pay for the cost of returning to the United States persons who were repatriated in error, as provided in Article 3 of this Agreement.

## Article 6
### Entry into Force and Duration

1. This Agreement will enter into force sixty (60) days from the date of signature by both Governments.

2. Upon entry into force, this Agreement will be valid for five years. The Agreement will be extended automatically for terms of three years thereafter unless written notice not to extend is given by one Government to the other at least six months prior to the expiration date of the Agreement.

## Article 7
### Amendment and Supplementation

This Agreement may be amended or supplemented by written agreement of the Vietnamese Government and the U.S. Government through appropriate diplomatic channels.

### Article 8
### Resolution of Disputes

Any disputes regarding the interpretation and implementation of this Agreement will be resolved through appropriate diplomatic channels.

### Article 9
### Suspension or Termination

This Agreement may be suspended or terminated by either Government. Such suspension or termination of this Agreement will come into effect after thirty days (30) from the date one Government receives the written notification from the other Government of its intention to suspend or terminate.

Done at Hanoi, on 22 January 2008 in duplicate in the English and Vietnamese languages, both texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT OF
THE SOCIALIST REPUBLIC OF
VIETNAM

_**Annex 1**_

## EXPENSES FOR REPATRIATION

| Content | Expenses for Repatriation |
|---|---|
| 1/ Expenses for verification (including verification through the Vietnamese Embassy in the U.S.,) and receipt at airports in Vietnam | $140/person |
| 2/ Transportation fee for the repatriated person from airport to the place of residence | $10/person |
| Total: | $150/person |

*Phu luc 2*
*Annex 2*

# BẢN TỰ KHAI
## SELF-DECLARATION FORM
*(Dùng cho công dân Việt Nam được lệnh trục xuất khỏi Hoa Kỳ)*
*(For Vietnamese citizens who have been ordered removed from the United States)*

**1. Họ tên khai sinh** *(viết chữ in hoa):*
   *Full name (In capital letter)*
  - Các tên khác *(nếu có)*
   *Other name (If any)*
  - Giới tính: Nam, nữ
   *Sex    Male, female*
  - Ngày sinh:        - Quốc tịch gốc:
   *Date of birth       Nationality at birth*
  - Nơi sinh:         - Quốc tịch hiện nay:
   *Place of birth     Nationality at present*

Ảnh
(Cỡ 4cm x 6cm
mặt nhìn thẳng,
đầu để trần)
Photograph with
size 4cm x 6 cm
without hat

**2. Địa chỉ thường trú trước khi rời Việt Nam** *(ghi rõ thôn, xã, huyện, tỉnh, hoặc số nhà, đường phố, phường, quận, thành phố):*
*Previous permanent address before leaving Vietnam (state specifically the village, commune, district, province or house number, street, precinct, district, city)*

**3. Rời Việt Nam ngày    tháng    năm**
*Date leaving Vietnam:*
- Bằng hình thức:
 *Mode of departure*
- Mang hộ chiếu hoặc giấy thông hành số:    cấp ngày    tháng    năm
  Cơ quan cấp:
 *Holding passport or laisser-passer number:    Issued on:    By:*

**4. Trước khi đến Hoa Kỳ đã ở những nước nào, làm gì** *(ghi rõ từng thời gian):*
*Before arriving in the United States, in which countries have you lived, what did you do there (state the time)*

**5. Đến Hoa Kỳ ngày    tháng    năm**
*Date arriving in the United States:*
- Bằng hình thức:
 *Mode of entry*
- Mang hộ chiếu hoặc giấy thông hành số:    cấp ngày    tháng    năm

Cơ quan cấp:
*Holding passport or laisser-passer number:*      *Issued on:*      *By:*

**6. Thân nhân ruột thịt ở Việt Nam (cha, mẹ, vợ, chồng, con):**
*Relatives in Vietnam (parents, spouses, offspring)*

| Số TT No. | Họ và tên Full name | Ngày sinh DOB | Quốc tịch Nationality | Quan hệ Relationship | Địa chỉ thường trú ở Việt Nam Permanent address in Vietnam |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**7. Thân nhân ruột thịt ở nước ngoài (cha, mẹ, vợ, chồng, con):**
*Relatives abroad (parents, spouses, offspring)*

| Số TT No. | Họ và tên Full name | Ngày sinh DOB | Quốc tịch Nationality | Quan hệ Relationship | Địa chỉ thường trú ở nước ngoài Permanent address abroad |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**8. Khi về Việt Nam cư trú với ai** *(họ tên, quan hệ với bản thân)* **tại địa chỉ nào**
*(thôn, xã, huyện, tỉnh, hoặc số nhà, đường phố, phường, quận, thành phố):*
*On returning to Vietnam, whom you will live with (give full name, relationship) and proposed address (village, commune, district, province or house number, street, precinct, district, city).*

Tôi cam đoan những điều khai trên là đúng sự thật và xin chịu trách nhiệm trước pháp luật của Nhà nước Việt Nam.
*I swear that the above statements are true and for which I am fully responsible to the Vietnamese laws.*

Khai tại            ngày      tháng      năm
*Done at*            *On*

**Người khai**
*(ký và ghi rõ họ tên)*
*(signature and full name)*



**PERMANENT RESIDENT CARD**

NAME NGUYEN, THO

INS A# 023-879-102

Birthd... ...y    Sex
.02/0...    ...    M
Cou... ...th
Vie...
CAR... ...PIRES 0...0/07
Resident ... 01/29/80

C1USA0238791027WAC9802050901<<
7802074HG712095VNM<<<<<<<<<<<2
NGUYEN<<THO<<<<<<<<<<<<<<<<<<<